```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION
```

```
Michael D. Raetz                    )
                                    )
     Plaintiff,                     )
                                    )
                                    )
     v.                             )    No. 19 CV 3644
                                    )
ADP,                                )
     Defendant.                     )
                                    )
                                    )
                                    )
                                    )
```

Memorandum Opinion and Order

Eleven years into his tenure as a Risk Safety Consultant at ADP, plaintiff Michael Raetz, who was then sixty-one years old, attended a companywide training session on a new software program. The session was conducted by an outside trainer, who at several points during the training suggested that "millennials" pair up with "old-timers" to help them understand the software. Plaintiff took offense at what he viewed as an implication that older people are not as computer-savvy as their younger colleagues. Twelve days later, at a regularly-scheduled team meeting, plaintiff's supervisor, Booker Eubanks, asked what everyone thought about the training. Plaintiff responded, "I'm not sure why we were requested to attend based on the facilitator's comments that old timers need help from the millennials. And millennials, sit at a table with

old timers." Def. L.R. 56.1 Stmt., ¶ 37. Eubanks did not discuss plaintiff's feedback with anyone else, and neither he nor plaintiff followed up on the matter.

Six months later, in March of 2018, plaintiff applied for a promotion to the position of Manager Risk and Safety for California, but he was not selected for the job. Another candidate, thirty-six-year-old Mark Sheridan, a California resident who had been an ADP employee for less than a year, was hired instead. Plaintiff filed a charge of age discrimination and retaliation in the Equal Employment Opportunity Commission, claiming that he was passed over for the promotion in retaliation for his complaint about the trainer's "old-timers" remarks and because of his age. After receiving a right-to-sue letter, he timely filed this suit asserting the same claims.

Defendant seeks summary judgment on all claims, arguing that plaintiff cannot prove retaliation because his comment to Eubanks about the "old-timers" remark did not constitute protected activity, and because even if it did, the undisputed evidence establishes Eubanks did not report plaintiff's comment to anyone involved in the decision not to promote him. Plaintiff concedes that his retaliation claim does not survive summary judgment, so I need not linger on these arguments.

In defendant's view, plaintiff's concession is also fatal to his age discrimination claim because the only theory plaintiff

2

presented to the EEOC and in his allegations and discovery responses in this case is that defendant failed to promote him based on his complaint about the age-related comments. I do not read plaintiff's submissions so narrowly. Nevertheless, because I conclude that no reasonable jury could find on the totality of the record that plaintiff's age was the "but-for" cause of defendant's decision not to promote him, summary judgment is appropriate.

I.

Here is what the undisputed facts show:

- Plaintiff began working at ADP in 1999, after a thirty-year career at various fire departments in the suburban Chicago area. His territory as a Risk Safety Consultant III—the position he has held throughout his tenure at ADP—includes suburban Chicago, southwest Wisconsin, St. Louis, Southern Illinois, and parts of Kansas City. Def.'s L.R. 56.1 Stmt. ¶¶ 15-16, 22.

- In 2016, plaintiff applied for the same position he claims he was discriminatorily denied in 2018. He was not offered the job in 2016 because Caleb Grant and Arthur Brittain—the same managers who decided not to promote him in 2018—determined that he was not qualified. The position was awarded instead to an individual named Donald Kramer, a California resident older than plaintiff. Before Kramer, the position was held by a California resident named Geoff Shipp. Since ADP created

3

the position of Manager Risk and Safety for California in 2011, it has been held only by California residents with experience in the California market. Def.'s L.R. 56.1 Stmt., ¶¶ 72-75, 77.

- When defendant hired Mark Sheridan as a Risk Consultant III in August of 2017, the Manager Risk and Safety position for California was open, but defendant was unable to fill it for budgetary reasons. Brittain and Grant intended at the time they hired Sheridan to promote Sheridan, who had experience in the California market, to the manager position when it became budgeted. Indeed, Grant and Brittain began grooming Sheridan for the manager position upon his hire. In his first several months as a Risk Consultant III, Sheridan performed very well. Sheridan was instructed to apply for the Manager Risk and Safety position when it became budgeted and available to fill in March of 2018. Def.'s L.R. 56.1 Stmt., ¶¶ 48-52.

- Although the Manager Risk and Safety position was posted internally as required by ADP policy, Brittain and Grant had already decided to hire Sheridan for the job. Grant told ADP's internal recruiter to move forward with an offer for Sheridan, unaware that plaintiff had also applied for the position. Upon learning that plaintiff had applied for the position, Grant interviewed him as a courtesy and to learn more about plaintiff in the event a position suitable for him might arise

4

in the future. Plaintiff was not genuinely considered for the Manager Risk and Safety position, however, as Brittain and Grant had already selected Sheridan. Def.'s L.R. 56.1 Stmt., ¶¶ 55-60; Pl.'s L.R. 56.1 Stmt., ¶¶ 84-85.

## II.

"[T]he singular question that matters in a discrimination case [is]: '[W]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020) (quoting *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)) (original alterations). For plaintiff to prevail on his failure-to-promote claim, he must point to evidence from which a jury could conclude that his age was the "but-for reason that he was not promoted." *Id*. at 599.

In this case, what the undisputed facts show is that Sheridan's promotion to the Manager Risk and Safety position had everything to do with Sheridan and nothing to do with plaintiff. Indeed, the job was earmarked for Sheridan from the time he was hired, assuming that he performed as expected, which all agree that he did. Plaintiff tries to raise a triable dispute concerning the reason he was not selected based on: 1) a recruiter's assessment that plaintiff "definitely appear[ed] to meet the

5

qualifications" for the job; 2) his supervisor's comment that he "did a great job" at his interview; 3) the fact that the internal vacancy announcement did not specifically list California residency or experience as a requirement for the Manager Risk and Safety position; and 4) defendant's departure from its internal practice and protocols by promoting a recently hired candidate without genuinely considering plaintiff. Pl.'s L.R. 56.1 Stmt. at ¶¶ 83-86, 92-93. But none of this evidence alters the big picture that emerges from the facts the parties agree upon: Sheridan was already penciled in for the position of Manager Risk and Safety for California before the job was even available based on his qualifications and past experience; his performance in his first months as an ADP employee sealed the deal for Brittan and Grant, whose views were the only ones that mattered.

Plaintiff's subjective opinion is that he was better qualified than Sheridan for the Manager Risk and Safety position for California, presumably based on his years of experience in the Midwest market. Recall, however, that Brittan and Grant undisputedly found that plaintiff was *not* qualified for the job in 2016, when they hired a California resident older than plaintiff. Plaintiff points to nothing in his professional trajectory to suggest a change in his own qualifications in the intervening years.

6

It is true that defendant muddies the waters by offering a host of additional reasons it claims it would not have offered plaintiff the managerial position even if Sheridan had not been selected. Defendant points, for example, to plaintiff's past job performance and his rambling conversational style during his interview. But Grant testified that he had no knowledge of plaintiff's job performance at the time he hired Sheridan and could not even recall plaintiff's interview. Plaintiff leverages this testimony—along with a handful of other reasons defendant now claims it would not have promoted plaintiff even if it had not promoted Sheridan but arguably did not consider at the time of its decision—into a pretext argument. But this argument goes nowhere, since all agree that the *real* reason plaintiff did not get the promotion is that Grant and Brittain had already decided to offer the job to Sheridan.

Indeed, Sheridan's promotion was a foregone conclusion before the position was budgeted and before plaintiff threw his hat in the ring. Brittan and Grant's honest belief that Sheridan was the better candidate is a legitimate, non-discriminatory for his selection. *Barnes v. Bd. of Trustees of Univ. of Illinois*, 946 F.3d 384, 389 (7th Cir. 2020) (citation omitted). Defendant's effort to gild the lily by adding reasons it would not have promoted plaintiff anyway does not suggest pretext absent some evidence that Brittain and Grant did not genuinely believe that

7

Sheridan's experience made him better qualified than plaintiff. *See id*. at 389-90 (pretext is not "just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action.") (internal quotation marks and citation omitted).

Nor does plaintiff's insistence that he was not genuinely considered at all for the promotion help his case. So far as the record reveals, defendant did not consider *anyone* but Sheridan. That might be inconsistent with ADP's internal protocols, but it does not suggest that plaintiff was passed over because of his age.

The record here is nothing like *Rudin v. Lincoln Land Community College*, 420 F.3d 712 (7th Cir. 2005), a case on which plaintiff relies for its pretext argument. In *Rudin*, a white professor brought a race discrimination claim after she was passed over for a tenure-track position in favor of a minority candidate at the culmination of an explicitly "race-conscious hiring process" involving over a hundred applicants and numerous decisionmakers. *Id*. at 721. The plaintiff in *Rudin* pointed to evidence that the successful candidate was not initially among those selected for an interview but was added to the interview list by an individual charged with ensuring "sufficient diversity among the interviewees." *Id*. at 716. After the interviews, the plaintiff was ranked second-highest among the candidates, while

8

the candidate who was ultimately successful was ranked second from the bottom. The plaintiff also testified that the Chair of the Screening Committee told her that the successful candidate "was not more qualified" than she, and that the Committee was "under administrative pressure" to select the chosen candidate. The university's president vehemently disputed that the administration pressured the Committee and told the plaintiff that the Chair was "lying" and that "there was a problem with the process, the way the hiring was done." *Id*. at 717-18. On the totality of these facts, including the university's explicitly race-sensitive hiring process and the successful candidate's "insert[ion] into the interview pool based on his race," the court concluded that the plaintiff was entitled to have a jury decide whether the university had the requisite intent to discriminate. *Id*. at 722.

The fact pattern in *Rudin* finds no echo in the record here, which reveals not so much a "problematic" selection process as no selection process at all beyond Brittain and Grant's consideration of Sheridan himself. The simple, undisputed fact is that Sheridan was the preordained candidate, whom Brittain and Grant had hand-picked based on their view of his experience and performance. There is no evidence that they gave any real consideration to plaintiff at all as a candidate, much less that they considered his age as a factor cutting against his candidacy.

In sum, plaintiff's age discrimination case, which began with his objection to the stray remarks of an outside trainer, now rests entirely on Brittan and Grant's selection of a younger employee for a management position that plaintiff admits they had been grooming him for, and that they had found plaintiff unqualified for two years earlier before hiring someone older than plaintiff. No reasonable jury could find on this record that plaintiff's age was the "but-for" cause of defendant's failure to promote him.

### III.

For the foregoing reasons, defendant's motion for summary judgment is granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: August 4, 2021